4 F.3d 996
 62 Fair Empl.Prac.Cas. 1432
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
 Merl E. BLAIR, Plaintiff-Appellant,
v.
GRAHAM CORRECTIONAL CENTER, Local 2856 American Federation
of State, County and Municipal Employees, and
Illinois Department of Corrections,
Defendants-Appellees.
 
 No. 92-1597.
 United States Court of Appeals, Seventh Circuit.
 Argued June 1, 1993.
Decided Sept. 1, 1993.
 Before POSNER, COFFEY and EASTERBROOK, Circuit Judge.
 
 ORDER
 
 1
 In 1984, the Illinois Department of Corrections hired Merl E. Blair as a correctional officer in the security department at the Graham Correctional Center ("Graham"). Blair informed his supervisors that he was a Seventh Day Adventist and could not work on his Sabbath, from sundown Friday to sundown Saturday. For the first six months of Blair's employment, he was on probationary status and Graham officials were able to arrange his schedule so that he could have Friday nights and Saturdays off. Once Blair successfully completed his probationary period he became a regular employee subject to the labor contract between Graham and the American Federation of State, County, and Municipal Employees, Local 2856 ("Union"). Under the scheduling rules of that labor contract, Graham employees bid for which schedule they would work, with the more senior employees under seniority provisions selecting first. Because weekends off was the preference of most employees, Graham was no longer able to accommodate Blair's religiously-inspired scheduling needs. Blair because of his religious beliefs and thus self-imposed absences was eventually discharged for excessive absenteeism.
 
 
 2
 Blair filed a lawsuit charging that Graham, the Illinois Department of Corrections and the Union violated Title VII of the Civil Rights Act of 1964 by failing to accommodate his scheduling preference and then discharging him. Specifically, Blair alleged that Graham violated 42 U.S.C. Sec. 2000e-2(a)(1), which, in pertinent part, makes it an unlawful employment practice for an employer "to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's ... religion ..." Blair alleged that the Union had violated 42 U.S.C. Sec. 2000e-2(c)(1), which, inter alia, makes it unlawful for a labor organization to discriminate against one of its members on the basis of religion.
 
 
 3
 In order to establish a prima facie case of religious discrimination, Blair must show that (1) a bona fide religious practice conflicts with an employment requirement, (2) he brought this practice to his employer's attention, and (3) the religious practice was the basis for his discharge. Wright v. Runyon, No. 92-3409, slip op. at 4 n. 4 (7th Cir. August 10, 1993). Graham concedes that Blair has made out a prima facie case. Therefore, the only question before us is whether Blair's discharge amounted to an impermissible discrimination in violation of Title VII. Title VII defines "religion", however, to include only those "aspects of religious observance and practice" that an employer is able to "reasonably accommodate ... without undue hardship on the conduct of the employer's business. 42 U.S.C. Sec. 2000e(j).
 
 
 4
 The district court, analyzing the case under Sec. 2000e(j), granted the defendants' motion for summary judgment, ruling that Blair's claim was controlled by Trans World Airlines, Inc. v. Hardison, 432 U.S. 63 (1977). We agree. Hardison, the plaintiff, was hired by TWA to work as a clerk in a large maintenance and overhaul base. The department he worked in operated "24 hours per day, 365 days per year, and whenever an employee's job in that department was not filled, an employee [had to be] shifted from another department, or a supervisor [had to] cover the job, even if the work in other areas ... suffer[ed]." Hardison, 432 U.S. at 66-67. Under the collective bargaining agreement which determined the terms of Hardison's employment, employees bid for particular shifts, with the most senior employees having first choice of assignments. Id. at 67. About a year after being hired by TWA, Hardison became an adherent of a religion which required him not to work from sunset Friday to sunset Saturday. Id. After a brief period in which TWA was able to accommodate Hardison's scheduling needs, it became impossible to permit him to have his Sabbath off without violating the seniority bidding system. Id. at 68. TWA rejected a proposal that the plaintiff work only four days per week. Id. Eventually, Hardison was discharged on grounds of insubordination for refusing to work his designated shift. Id. at 69. He sued TWA and his union claiming religious discrimination as prohibited under 42 U.S.C. Sec. 2000e-2(a)(1), and by regulations eventually codified in 42 U.S.C. Sec. 2000e(j). Id. at 69. Interpreting the language now contained in Sec. 2000e(j) that employers are required to "reasonably accommodate" an employee's "religious observance or practice" unless that causes "undue hardship on the conduct of the employer's business", the Court upheld TWA's dismissal of Harding. Id. at 77. The Court began its analysis by noting that "TWA ... attempted without success to find Hardison another job." Id. The Court then stated that the seniority system of scheduling work shifts "represented a significant accommodation to the needs, both religious and secular, of all of TWA's employees" since it was "a neutral way of minimizing the number of occasions when an employee must work on a day that he would prefer to have off." Id. at 78. The Court also held that
 
 
 5
 "TWA itself cannot be faulted for having failed to work out a shift or job swap for Hardison. Both the union and TWA had agreed to the seniority system; the union was unwilling to entertain a variance over the objections of men senior to Hardison; and for TWA to have arranged unilaterally for a swap would have amounted to a breach of the collective-bargaining agreement."
 
 
 6
 Id. at 78-79. The statutory duty to accommodate an employee's religious needs, the Court held, does not require an employer to "take steps inconsistent with the otherwise valid [collective bargaining] agreement." Id. at 79. Moreover, the Court observed that
 
 
 7
 "[t]he seniority system was not designed with the intention to discriminate against religion nor did it act to lock members of any religion into a pattern wherein their freedom to exercise their religion was limited. It was coincidental that in plaintiff's case the seniority system acted to compound his problems in exercising his religion."
 
 
 8
 Id. at 82 (citation omitted). "... TWA was not required by Title VII to carve out a special exception to its seniority system in order to help Hardison to meet his religious obligations.... To require TWA to bear more than a de minimis cost in order to give Hardison Saturdays off is an undue hardship." Id. at 83-84; see also Ryan v. United States Department of Justice, 950 F.2d 458, 461 (7th Cir.1991), cert. denied, 112 S.Ct. 2309 (1992).
 
 
 9
 The facts of the instant case are almost identical to those found in Hardison. Just as in Hardison, Blair did not want to work from sundown Friday to sundown Saturday and he is employed in an industry (a maximum security prison) which requires a full complement of security workers, seven days per week, 24 hours per day. Blair admits that for the first six months of his employment, before he became subject to the Union contract, Graham arranged for him to have his Sabbath off. As in Hardison, the employer here, Graham, attempted to find another position for Blair, either within the Illinois Department of Corrections, or with another state agency. These efforts failed, but Blair concedes that they were made on his behalf. Nevertheless, Blair argues that Graham could have arranged a shift "swap" between him and another employee to accommodate his religious beliefs. However, as we noted above, any employee senior to Blair had the right to bump Blair from his preferred schedule of sundown Friday to sundown Saturday off. Blair was unable to produce any evidence that such a swap could have been successfully completed. Blair also maintains that Graham could have allowed him to take every Sabbath off without pay until he had enough seniority to obtain his preferred schedule. This arrangement would have required Graham to hire another employee to work the day each week that Blair was absent (since the prison requires full-security staffing) or else pay a current employee to work overtime. Either way, Graham would incur more than the de minimis cost Hardison declared was not required by Title VII, as well as set an undesirable employment precedent possibly injurious to fellow employees and management in the field of personnel relations. Hardison, 432 U.S. at 84. Hardison, as we set out above, makes clear that Graham need not abandon its seniority system in order to accommodate the religious preferences of an employee, and, in fact, holds that the seniority system itself represented a "significant accommodation" to the religious needs of employees. 432 U.S. at 78. In a case involving a claim of religious discrimination made against the FBI by one of its agents, we observed that it "is difficult for any organization to accommodate employees who are choosy about assignments; for a paramilitary organization the tension is even greater." Ryan, 950 F.2d at 462. The same holds true for the security force of a prison. We are convinced that Graham's inability to accommodate Blair's scheduling request was not caused by animus towards him or his religious convictions, but rather by the constraints placed upon Graham by the collective bargaining agreement and the demands of managing the security force of a prison. Blair has been unable to distinguish his case from Hardison, and therefore the district court properly entered summary judgment on behalf of the defendants.
 
 
 10
 Blair advances several procedural arguments which require only brief comment. First, Blair makes a generalized assertion that the district court did not have sufficient facts upon which to base its summary judgment. We disagree. As we discussed above, the record created in the district court sets out the relevant facts in sufficient detail to conclude that Hardison required judgment in favor of the defendants. Blair also claims that the district court erred in relying for much of its factual findings on transcripts of hearings held before the Illinois State Human Rights Commission pursuant to a claim Blair filed with it arising from his dismissal. Blair makes much of the fact that the transcripts were inadmissible because they were not properly authenticated pursuant to Fed.R.Evid. 901 since the transcripts were not certified as accurate by the Human Rights Commission. However, at oral argument, Blair's counsel conceded that the transcripts made part of the record by the district court were free from error, and that they accurately represented the testimony of the relevant parties to this case. Thus, any error in the authentication of the transcripts was harmless and is not grounds for reversing a properly entered summary judgment order. Cf. Pfeil v. Rogers, 757 F.2d 850, 859 (7th Cir.1985), cert. denied, 475 U.S. 1107 (1986). Blair also argues that the district court could not properly rely on the transcripts because they contained hearsay. This argument borders on the frivolous. Blair does not argue that the statements contained in the transcripts were themselves hearsay, but rather that because they are in transcript form they were somehow improperly used by the district court. Fed.R.Civ.P. 56(e) requires that evidentiary material submitted in support of summary judgment "shall set forth facts as would be admissible in evidence." Blair does not contend that the statements made by the various witnesses recorded in the transcripts would not be admissible at trial. Therefore, this argument must also fall by the wayside. Finally, Blair claims that the district court erred in its management of the discovery process, specifically arguing that the court did not lift a protective order in time for him to conduct certain discovery depositions. In its brief, Graham argues that Blair waived this issue by failing to object to the entry of the protective order. Blair does not respond to this waiver argument in his reply brief, and therefore has abandoned this argument. In any event, we review the discovery decisions of district courts for abuse of discretion only, Ross v. Black & Decker, 977 F.2d 1178, 1185 (7th Cir.), cert. denied, 113 S.Ct. 1274 (1992), and our review of the record leaves us convinced that the court allowed ample time for the creation of a full record upon which to base its judgment.
 
 
 11
 AFFIRMED.